Let's see, is Crouse v. Benning for the appellant. It's Colleen Lawless for the appellate. It's Brad A. Elward and I think I failed to mention this is case number 4-101005. You may proceed. Colleen Lawless Good afternoon, Your Honors. Good afternoon, Counselor. My name is Colleen Lawless and I represent the plaintiff appellant Patricia Crouse. Patricia Crouse brought suit against defendant Nathaniel Benning for injuries she sustained when she was rear-ended by him in December of 2004. This matter went to trial and the jury entered a verdict for the defendant. The questions presented for review are whether the trial court erred in refusing to direct findings that the defendant was negligent as a matter of law and also for the plaintiff could not be contributorily negligent as a matter of law at the close of evidence and after the verdict was entered. Finally, whether the jury verdict was against the manifest weight of the evidence. In support of this subverted evidence, presenting at trial requires a finding that the defendant was negligent as a matter of law when he admitted he was looking in the rear-view mirror before rear-ending the plaintiff that he misjudged the speed and distance between his car and the plaintiff's car because he was distracted by the traffic in the other lane and that even though he noticed the plaintiff's car and her taillights, he could not stop in time because he was approaching her car too quickly. Second, the plaintiff's failure to use her right turn signal is not, it cannot rise to the level of contributory negligence as a matter of law when there is no evidence in the record to support that the plaintiff... Counsel, do I understand the law correctly that if the defendant was at least 50% contributory negligent, your client was entitled to some recovery, 50% of whatever damages were, if they were 50%? Yes. The jury verdict that was presented to the jury allowed that the plaintiff, if the defendant was negligent, if the plaintiff was not contributory negligent in excess of 50%, then my client was entitled to some portion of damages or liability in the situation. So this jury then had to conclude that the plaintiff was 50% responsible for the accident? Yes. Well, couldn't the jury also conclude that the plaintiff was more than 50% contributory negligent within the instructions given to reach the same verdict? Yes, they could have found that the plaintiff was more than 50% contributory negligent, but our argument is that the evidence does not support such a finding based on the fact that the plaintiff's use of a right turn signal in the facts that were presented to the jury could not have led the defendant... Well, I understand, but that's a different argument. I just want to make it clear that the instructions given to the jury were if you find that the plaintiff was more than 50% contributory negligent, you should return a verdict for the defendant? Yes. Well, I agree with that, but doesn't that mean that they would have found the defendant was less than 50% contributory negligent? Yes, it would have. They kind of go hand in hand. Exactly. So my answer to you would be yes to both of yours, except the fact of finding more than 50% on my client's, on the plaintiff's negligence would have then meant that the defendant was less than 50% negligent. It seems like I tried to hone in on this as much as I can, but as far as whether your client was within 100 feet of the intersection, thereby requiring a turn signal, is it clear in the record that she was or was not? I believe that it is clear within the record that the defendant at trial testified that the plaintiff was at least 200 feet away from the intersection at the time he impacted her, and that it is true as the defendant had brought up in his brief that my client did testify that she was within 4 to 5 car lengths of the intersection, there was 4 to 5 cars in front of her, with a reasonable distance in between their cars. She did not give an estimate of how many feet that would have been. I think a reasonable interpretation is when the defendant states it's more than 200 feet and she gives a 4 to 5 foot car estimate with reasonable distance in between, that yes, it's clear from the record. Let me ask this question, counsel. It seems to me an automobile accident would happen here. This is the kind of thing that jurors have vast personal experience about, almost everybody. And the issue, at least in part for them, was would it have mattered, and if so, how much? Had the plaintiff put a turn signal on as soon as she was required to do so? The defendant said, I didn't see her in time and I couldn't stop in time, but had she had a turn signal on, that suggests the driver is a person slowing down and not going by the normal speed and so forth. I'm just trying to look at this through the eyes of a reasonable juror to conclude that but for her failure to have a turn signal on, maybe this accident wouldn't have happened at all? I think it is reasonable to conclude that no reasonable juror would have found that if my client would have used her turn signal in this situation, that it would have distracted the defendant in any way. It wouldn't have changed his conduct. He stated he saw the car, he saw the light, he saw her tail lights, he just simply applied his brakes too late because he wasn't paying attention. He was looking in his rearview mirror at the time. He didn't know the flow of traffic in the lane he was in. He specifically testified he knew the flow of traffic in the left lane, which is the lane he was not driving in, because he was attempting, he was going to in the future, switch lanes. He saw the lights, but he didn't see any brake lights? He did not see any brake lights, but he did see her car and the tail lights. He saw her car, but there was no indication that it was not moving or it was moving slowly? Well, the indication would have been if he would have had the appropriate time to see the cars in front of her. He testified he didn't even know how many cars were in front of her. And this, you can reasonably allege, was that it was because he didn't have enough time to notice that because he was looking behind him at the time. When he looked forward, regardless if my client had had a turn signal on, that's the first time he saw her car. He saw her tail lights, he saw her car. If he would have seen the turn signal, he wouldn't have stopped any quicker than what he already did. How did he know that? A flashing turn signal is an indication that this is a car that's not moving or may not be moving at the normal speed of other traffic. It's the time frame in which he's testifying that he stopped. He testified that he was looking in his rearview mirror. When he looked forward and noticed her car, he applied the brakes immediately when he noticed he was approaching her car. But that begs the question. He didn't notice the car. But would he have noticed the car and had the turn signal been applied as required? I don't believe you're going to notice the car anymore if they had a turn signal on rather than if it was a car with tail lights on. Well, tail lights because it's dust. I mean, tail lights aren't indicative of the motion of the car. Cars move at 70 miles an hour with tail lights on. Yes, that is true. But with the fact of, if he immediately applied the brakes as soon as he saw her car in general, the fact of a turn signal on, he would have just applied it at the same time he applied it when he saw her car originally, which would lend to the fact that the turn signal being on or not does not tend to establish any differential with his conduct. So your argument is his testimony was that as soon as he saw the car, which I guess as soon as he looked up, he applied his brakes. Right. And it was already too late. And it was already too late. And he was approaching her car too quickly, he applied the brakes, he did not have enough time, and he rear-ended her. And as the, there's four cases that the plaintiff had cited in their brief where the facts are almost identical to the situation here. The defendant rear-ends the plaintiff and claims that it's the lack of a turn signal that causes, that makes the plaintiff contributorily negligent. In all four cases, the appellate court reversed the jury's verdict for the defendant and found that the defendant was negligent as a matter of law and that the plaintiff could not be contributorily negligent as a matter of law. I would point your direction to Burroughs v. McGinnis, which is the 5th District case. And in that case, the defendant rear-ended the plaintiff's car while he was waiting to turn right. The plaintiff was waiting to turn right approximately 100 feet away from a parking lot. The defendant admitted that he did not see the plaintiff's car until the last minute because he was distracted by confusion of traffic in another lane and looking somewhere else when he should have been looking forward. The defendant also, in that case, admitted that he saw the taillights but that he did not see plaintiff's turn signal or brake lights. In that case, the court held the evidence supported that they clearly established the defendant's negligence for his failure to be alert as to the traffic in front of him. Did the plaintiff have a signal light on? I'm sorry? Did the plaintiff have a signal light? In that case? Yeah. I do not... I mean, activated? I believe that was in contest. I do not believe that it was established that it did or did not. But the court found that regardless if the turn signal was on or not, it was not going to change the defendant's conduct. Well, let me ask this question, counsel, because this is, again, going back to my idea about jurors being familiar with this whole business. When you're driving and you say he wasn't paying attention, he was looking in his rear view mirror is in the front, just above. So he could be looking in the rear view mirror and still have the field in front of you in front of him. And a flashing light, even if you're looking in the rear view mirror, is the kind of thing that might get one's attention as opposed to no flashing light. The flashing light of a turn signal. Even though you're looking at... He mentioned this, he was looking in the mirror as if he had turned around. I don't think that's the case. I'm trying to understand how the jury might have looked at this, and the jury might have said, gee, you know, by the time he looked and his attention was where it should have been, it was too late. But had she had her turn signal on as required, maybe he would have, while looking in the rear view mirror, have noticed the flashing light sooner. Well, did the evidence show that the signal light was required? In this case, I don't believe the evidence did show that the turn signal was required based on... Whose burden would it have been to prove that? Was this raised as an affirmative defense by the defendant? That would have been the defendant's burden to prove that the defendant... And what is the evidence as to whether the signal light was required? Because that seems to be the crux of this case. As I see that it is the crux of the case, I do not believe in this circumstance that regardless if she had the turn signal on or off, dependent on the four cases that were cited in the brief, the courts have found that regardless of that fact... Well, just amuse me. As far as whether it was required, which I think boils down to, was she within 200 feet? What is the evidence from your perspective and from the defendant's perspective? The evidence that was presented at trial was that the defendant admitted that the plaintiff was at least 200 feet away from the intersection at the time he had struck her. And that the statute requires that you be within 100 feet if you're within a residential and 200 feet if you're within a business district. And since the defendant testified and admitted that she was at least 200 feet away from the intersection, the evidence was presented that the defendant did not have to... But she admitted she was 4 or 5 car lengths away. Her testimony was that she was 4 or 5 car lengths away with a reasonable distance in between those car lengths. There was no other testimony regarding the amount of feet that was. She did not give an estimate to it. The only estimation that was ever given was by the defendant. And he said that she was at least 200 feet away. And the plaintiff also stated that she didn't have her turn signal on at this time because she was not required to. She was not going to turn at that time. And the defendant also admitted during his testimony that the plaintiff did not suddenly stop. That the plaintiff was not trying to move into the right turn signal. He testified that he hit her straight on. That all seems to suggest to me evidence of why the signal light was not required to be on. What is the evidence that it was required to be on? Or is that what I should be asking defense counsel when he gets up there? Justice Turner, I would have you ask opposing counsel on that one. I'll take a stab at it first, please. But as what I've seen from the record and the only thing that I can see that the testimony is is that my client had testified that she was within 4 to 5 car lengths. There was no testimony as to was this a business district, was it residential? There wasn't any testimony of that. And at this point, it's just 4 to 5 car lengths with a reasonable distance in between those cars. Wasn't this Veterans Parkway? Yes, it was. It was Veterans Parkway. It doesn't sound residential to me. You're correct. It doesn't sound, except actually right over there I believe there are some neighborhoods that are on the left side of that. I do not know what, there was no evidence. Is this a 4 lane limited access roadway? Yes, it was, but there was nothing else entered into evidence as to the zoning of what that particular street was. Where did the exit occur? Veterans Parkway and what? It was Veterans Parkway and I-72 intersection going towards Jacksonville. So you're contending, gee, maybe this was a residential? That is not my contention. I was just clearly stating that there was nothing in the record other than where it occurred and that the statute defines 100 feet for residential and 200 for a business district. What was the speed limit there? The speed limit at that time I believe was 55 miles per hour, but there wasn't any issue as to speeding or sudden stopping or anything brought up by the defendant. The defendant specifically stated in his testimony, are you alleging that the plaintiff did anything other than not have her right turn signal on? Any misconduct by the plaintiff other than the right turn signal? And he said, you're correct. That's the only thing he was alleging that caused him to strike her, was that she did not have her turn signal on. It was not that she had suddenly stopped. You aren't arguing that every time there's a rear end collision, the person from the rear is guilty, are you? No, I am not arguing that. And I do want to make that clear because that was brought up several times in the defendant's brief. I am not arguing that this is negligence per se, just based on the mere fact that a rear end collision occurred. I'm stating that based on the totality of the circumstances and evidence presented, and more importantly, the defendant's own admissions, that this would rise to a level where the defendant was negligent as a matter of law. If you're driving on the highway and the person in front of you throws on his brakes and you rear end him, maybe it's his fault because he stopped and slowed down so quickly, right? In the cases that were presented, I believe it was, if you could give me one moment, in Hickox v. Irwin, which was the 5th District case, the defendant was driving behind the plaintiff down a highway and she began to slow down because she was approaching a disabled car. So it's very similar to the facts that you presented to me. The defendant testified as soon as he saw the plaintiff's brake lights that he hit his brakes but it was just too late and he collided with the plaintiff's car. In that case, the defendant stated, was also relying on the fact that the plaintiff didn't have a turn signal on to state that that's why he didn't have enough time to brake. The court found that the failure to use the turn signal was not the proximate cause given the ample warning the plaintiff's car had given by hitting the brakes. So in that situation, which is similar to the situation here, the court found that, yes, in that circumstance, the defendant was still guilty of, was still negligent as a matter of law based on the fact that the plaintiff had to stop on a highway and he just simply was approaching her too quickly and didn't have enough time to stop and avoid the accident. And in that case, the defendant was issued a traffic citation for failure to reduce the speed to avoid an accident and he pled guilty. That is similar to the case at hand here where the defendant was issued a ticket and pled guilty to it as well. You said we have to look at the totality of the circumstances. Given that, don't we have to respect the jury's verdict? How can we overturn the jury's verdict as a matter of law? And when I meant the totality of the circumstances, I believe I used the incorrect statement. I meant that it was not just the mere fact of the collision occurring, it was the admissions of the defendant as a whole and that under this abuse of discretion, the reviewing court will reverse the judgment only when no reasonable person could take the view adopted by the lower court. And it is our view that no reasonable person would have found that my client was contributory negligent in excess of 50% or that the defendant was not negligent as a matter of law based on the facts that were presented at trial. And we're relying on that based on the four cases that were cited and the facts that were presented at trial is very simple, that the defendant simply was not paying attention and he had stated as such Well, you shouldn't use the phrase not paying attention. He was paying attention to something else. There was an accident in which he just passed. You're correct. He specifically stated that after realizing he was catching the plaintiff's car too quickly and closer than he should have, he applied his brakes and it was simply too late and that's when he rear-ended her car. And it was due to the fact that he was looking in his rear-view mirror as well as being only cognizant of what the left-hand traffic was and not what the right-hand traffic was. Didn't his car get rear-ended as well? Yes it did. Somebody make anything of that? No, in this circumstance I do not believe you're allowed to make anything of that. There wasn't any evidence regarding why that car had struck the defendant's car in the rear. It's nothing that has to do with my client in this circumstance. Counselor, you'll have time out of time for now, but you will have time on rebuttal. Thank you very much. Thank you. Brad Elwood on behalf of Nathaniel Bain. Did you try this case, Counselor? No, I did not. Mr. Simmons did, of our Springfield office. How did he talk that jury into finding that your client was at least 50% contributory to the negative? Well, I think the evidence in this case led to that conclusion. And if this case was tried 100 times, would every time the case was tried, would that be the result? Probably not. What was the evidence that the signal light was required? Well, the signal light is based upon the distance. And one of the questions, a fact that was noted by the trial court when the direct verdict motion was presented, was where did the accident or the collision occur? And in this case, they make a lot of what they consider to be an admission by my client. But really in trial, he was asked if he recalled, he said, I don't recall how far I was where the accident occurred. She said, well, in your deposition did you say it was 200 feet? And he said, I think so. So we don't have any real definitive testimony from him, but I would ask this court this. Whose admission, if you call it that, if you want to use your terminology, whose are we supposed to look at? His or hers? And when she says, I'm four to five cars plus a reasonable amount of space in between, if that's over 200 feet, those are really big cars. And I think the jury was entitled to take a look at that and say which of these witnesses... Four cars, 50 feet in between each car? That's not a reasonable amount of feet, but the question is, what is a reasonable amount? At the time the accident occurred, does the record show whether the plaintiff's car was moving? Yes, the plaintiff's car was moving. And it was her own testimony. And that leads to one of the comments about the distance. You've got four to five car lengths plus a reasonable amount in between. But she says, I also took my foot off the brake and started moving forward with the track. So we know from wherever that point is that somebody has to determine where she was. Well, what's the issue about taking your foot off the brake and moving along with the flow of traffic? I'm sorry, I didn't hear the first part. You said she testified she took her foot off the brake and started moving forward along with the flow of traffic. What is negligent about that? Well, what that does is that, well, two things. First of all, my answer was limited to, my answer was given in respect to the distance that she was. And what my point to Justice Steinman was, if she's saying that I am at some point four to five vehicles plus reasonable distance away from the intersection and she says, I took my foot off the brake and started rolling forward, we know that she was closer than whatever that four to five vehicle distance is. Now, as you pointed out, what is that distance? What's the reasonable amount of space in between? Whose job is that to resolve? It's the jury's right to resolve based on their own experiences when they go up to a traffic light. How long had she been moving from the time she had taken her foot off the brake until the accident occurred? I don't think she quantified it and it was five seconds, ten seconds, two seconds. I don't recall any evidence along those lines. Did she say quickly, soon thereafter? It was soon thereafter if I recall. She says cross testified at page R63 of the record. Question, you took your foot off the brakes and put it on the gas to start going forward with the flow of traffic. Answer, correct. Forward and giving a little more gas as I'm going forward. She said she was moving forward with the flow of cars. I don't recall anything that quantified that in any time. She asked, did she testify that when she had her foot on the brake she was stopped? I don't recall that that was asked. I mean, I think it's a fair reading from the evidence that she was stopped and at some point took her foot off the brake. I don't recall that exact question being asked. It could have been that she had just slowed down and was traveling along at 10 or 15 miles an hour waiting for the turn. Yeah, I don't recall that the record addressed that either way. I don't recall that. Well, but Justice Turner's point, you know, really needs to be addressed by this. It seems to me to be an entirely different case. If she had been stopped, as to what's the reasonable distance between cars, if she'd been driving along at 15 miles an hour and had her foot on the brake, slowed down, and then took her foot off the brake, the same distance between cars described as reasonable distance is not going to apply in the second as it would in the first. My recollection is that I believe that she was stopped and then she took her foot off the brake and started going forward. Does she say that anywhere? I don't recall exact page, Your Honor. I honestly don't. I'm not trying to be evasive. I just honestly do not recall that. How many witnesses testified at this trial? The plaintiff and the defendant testified. There were some other witnesses that testified with respect to medical and the boyfriend testified. But there are no other occurrences? I don't recall any. How much money did she ask for? I don't recall. You'd have to ask. I don't remember what she asked the jury for. Well, was it some kind of outrageous amount that may have turned the jury against her or something? I don't recall that, Your Honor. Did your client have his left turn signal on? I don't recall that. Didn't he testify that he himself was getting ready to turn left? Absolutely he was. And I'd like to clarify a couple of comments with respect to Mr. Bain's testimony. Counsel started out with her first point. She said there are several things that are uncontroverted in the record. She said it was admitted he was looking in the rearview mirror. I think the court addressed that somewhat, but he wasn't looking backwards. He was looking in his mirror to make sure that he had cleared another accident that had taken place on the right side of the road. And she says he misjudged the distance. He admitted he was distracted. I don't believe he admitted he was distracted. I think that's her conclusion. And I would draw the court's attention to his testimony, which I think addresses that. On page 23 of the transcripts, he says, Mr. Bain says, I had seen her and started accelerating and had time to react. I just didn't perceive at first from that distance that I was behind her that I was going faster than her speed was. And so then after I realized how quick I was catching her, then I applied my brakes. But at that time it was too late. I could not avoid. What that tells me, and I think what that told the jury is, that had he seen something flashing or even a brake light or pumping a brake light at a stoplight. I know when I'm sitting at a traffic light and there's a lot of cars stopped and people are coming up and that light changed, I'm pumping the brake just to let the guy behind me know, hey, I'm not moving. We don't even have that in this case. And so what is going to be his trigger point? Was it reasonable based on what he saw at the time? Well, I think we didn't have that because you said that the plaintiff's testimony was that she had left her foot off the brake and she was accelerating. Exactly. So all he did see was a yellow light. So the signal light wouldn't have made any difference. She's accelerating. He can't just run over her whether she's got a signal light on or not. Well, but a signal light announces an intention to turn, which means as it turns. It announces that she's slowing down. Hence, I should slow down. But here she wasn't slowing down. She was speeding up. Well, I think his testimony here establishes at least a question of fact for the jury to decide, was he being reasonable? And he said, I passed an accident. I made sure I was clear. I looked up. And I didn't perceive that she was moving at a different speed. And as soon as he did, we don't know how long that was. But the jury can at least look at that and say maybe it would have been sooner if he had seen something flashing. He's going to turn. I better back off a little bit. Is there any question that he was negligent in hitting her? I think there is. I think there's two questions here. There's the issue of was he negligent based on the evidence in this case? And the second, if they find him negligent, the question is, did she have comparative fault or contributory negligence? So I think there's two points here. And as to whether he's negligent, we pointed out the Bergdorf case from this court. And I think what that case and the other Fourth District cases show us is that we begin our discussion of these types of accidents from the notion that this is not automatic liability. That there has to be overwhelming evidence of negligence in order for the court to direct the jury. Well, leaving aside the moment of whether she was required to have a turn signal on and did and all that, how in the facts of this case is he not negligent to have struck her from behind? Well, and I think you have to look at the whole context of this situation. This accident takes place at night. It's dark. There's probably an explanation for why he only saw her car because it was dark outside. He couldn't see around it. Should he have seen around her? I don't know. That's a question perhaps for the jury. But this gentleman in this position just encounters an accident. He's making sure he's clearing that. He looks up. Was he being reasonable at that time based on what he saw? And I think that's the question the jury needed to ask. And I don't think that the answer is automatically yes, in fact, he was negligent. Well, I don't understand. As I say, leaving aside any contributory negligent claims, I don't understand how you can conclude he wasn't negligent to have run into this car. Too fast for conditions. Well, you can't look at the admission on the ticket for that. No, I don't care about any ticket. I mean, just the description as I hear now, I don't care whether the cops gave him a ticket or not. There's a rule that says don't drive too fast for the conditions. Don't run into the people in front of you. If you violate a rule of traveling too fast for conditions, whether you're ticketed or not, and whether you plead guilty or not, it's a factor to be considered in the overall matter. Was he traveling too fast for conditions in this situation given what he encountered? And I think that's what we have to continue to go back to. We look back in this case, Your Honor, the trial judge heard all the evidence in this case. She heard both sides testify about the verdict. And she says, no, not based on the facts. There's question of facts. Well, the contributory negligence issue, though, is a different one. I'm just, it seems to me that that might be the basis of what the jury was thinking in this case. Perhaps sufficiently to trump your claims negligence, but I don't see how they could have thought otherwise as to his negligence. Well, it's certainly a possibility, but we don't have any type of interrogatories to the jury to ask them, how did you specifically find? So it could be either way. And I honestly do not think... Counselor, do you agree that when you raise the affirmative defense, it was incumbent upon you to assume the burden of proof that she was more than 50% contributory negligent? I think that goes without saying. When a party raises affirmative defense, I don't mean to be disrespectful. No, no, no, not disrespectful at all. What evidence did you provide that showed it was more likely than not that she was over 50% contributory negligent? What was the evidence on that? The evidence in this case was developed through the plaintiff's case. Okay, I understand. Four or five cars, a reasonable distance between them. Your client, apparently in a deposition, made an admission it was probably at least 200 feet. I guess in testimony, his client, his testimony was he wasn't exactly sure. Is that it? Does that prove that it was more likely than not that she was 50% contributory negligent? The evidence on the comparative fault issue, contributory negligence, comes from her argument that she was in relationship to the intersection and the fact that she was more likely than not. Yes, I think that's the evidence and that was the conclusion. We argued that it was the approximate cause of the accident, even if there was negligence on behalf of the defendant, that her negligence was greater. When did you raise this argument? When did you raise this affirmative defense? I know it was filed, I read it, I saw it, I saw it in the record. Before or after her deposition? I don't know that, Your Honor. I didn't see that as a significant point when I prepared for the argument. Do I understand you a few moments ago when you said the fact that your client pled guilty in traffic court was irrelevant? No, no, what I was saying is it's a factor to be considered. Well, certainly an admission of some negligence, isn't it? It's a factor to be considered along with all the other factors, but what I wanted to avoid is, and I also seem to be suggesting in her brief, that that was evidence that this should be disposed of as a matter of law. And my response to that is no. You can't say that because somebody got a ticket and pled guilty that as a matter of law that they're negligent and you can skip over that aspect. Well, if she flipped that on you and said that had she got a ticket for fare that her client didn't have a signal light on, that that wouldn't really make any difference either, even if she had pled guilty to it? See what I'm saying? There's a counter to that. Yeah, it would be a factor. And again, I raise that because I did not want, I think the court appreciates this, but I just did not want the perception that the ticket made it as a matter of law. It's a factor to be considered, and we understand that. And here's the thing too, I guess as I was thinking about this for preparation, I thought, what if they would have allowed a directed verdict on the issue of my client's negligence and said as a matter of law, Mr. Bank, you're negligent. All the evidence is still going to come into the trial. Nothing really would have changed on how this trial was done. It still would have come down to the issue of whether or not the plaintiff was comparatively at fault. And we still would have gotten everything that came in, would have came in as a task. And if you made that assumption that he was negligent as a matter of law, or if you say that he was negligent and basically found that, you still come back to  the assumption that he was comparatively at fault. And that it was greater than 50%. I think the question is yes. Would it be in every case? Probably not. I don't think so. But that doesn't mean that in this case it shouldn't be supported. They're asking this court to intervene. They asked the trial court to intervene and take away a jury verdict. Twelve reasonable people, we conclude that juries are supposed to be reasonable. Twelve people heard this evidence and said, we're fining for the defendant in this case. What about the cases you heard counsel refer to before where they had reversed essentially on facts very similar to these? I think those cases, my first blush on those cases in reading was that they were troublesome. And then I started looking at all the other authorities and the decisions of this court and it struck me as I laid out in my brief that this court with Bergdorf, with Abrams, with Craig Miles has taken a more, I don't want to say more liberal, but more open position with respect to when you have these types of cases, this is a question for the jury and we're going to stand by that. When you look at these other cases, they're viewed in more of the crystal lens of a defendant in an auto accident scenario is going to be held liable as a matter of law. And they looked at the facts in that light. And so I don't think that you can make a fact-to-fact comparison from those cases from the Fifth District. I think two of them were. There was an older First District case. They viewed the facts through the lens of assuming that the defendant could be liable as a matter of law because of the rear-end accident. When you look at this court's decisions, which we cited several, the Third District, and I think I cited a case from the Second District, said no, that's not how we do it. We look at it in a different light and we say when we walk in here, this rear-end collision does not automatically create that inference. And I think that's the distinction. That's what we tried to point out to this court. I think that explains why the judge, why that explains the argument that we put before this court. Thank you. We would ask that you affirm. Thank you, counsel. Rebuttals, please. To answer a few of the questions that you had presented to the defendant dealing with the factual evidence that was put in at trial, Ms. Krause did testify, and it's in the trial record, page 47, that she was stopped for 15 to 20 seconds before she had released the brake because it was a red light and it had just turned green and she had taken her foot off the brake and began creeping forward for just a few seconds. It was not a situation where they were going 55 miles an hour, I think, as you had said, Justice Steigman, and she had suddenly stopped or there was any issue with that. It was simply she was stopped at a red light. The cars, it turned green. There were four to five cars ahead of her. Everyone started to creep forward. It was during the time that it was a traffic situation. It was around the time of Christmas. So there were many cars, and it was just a slow... Were you trial counsel? Yes, I was. Justice Steigman wanted to know what was asked for in this case. I'm curious, too. What did you ask the jury to return? I believe, I don't know the exact number, but I can remember from my assessment that it was around $50,000. She had over $10,000 in medicals. She had, I believe, over $3,000 in loss of wages, and that she had considerable pain and suffering since that time. This happened in 2004, and there was testimony by Ms. Krause, as well as her boyfriend and now husband, that she has suffered significantly from that time, and she's restrained from doing many of the activities that she had previously enjoyed. And to answer another question, was that the defendant did not refute any of the medical testimony, or even allege the extensive plaintiff's injuries were not as what she had stated. My guess is you were surprised by the jury's verdict. Yes, Your Honor, I was absolutely surprised by the jury's verdict, based on the overwhelming evidence that the defendant was negligent, and that my client, regardless of a turn signal, it was not going to change the defendant's conduct. And I believe it's important to note that the cases that were cited by the defendant in this case, specifically the Abrams case that is being referred to, that was, this court made two significant distinctions in the Abrams case. First of all, that was a motion for summary judgment, and the court specifically stated the reliance on many of the cases that I had cited in mine was not, it was not relevant to that situation in Abrams because it was a summary judgment standard. Also, this court specifically stated that the strict liability standard repeatedly argued by a defendant in this case was not applied in Glenn v. Mosley, as the defendant likes to state. As I had said to Justice Cook before, I'm not alleging that this is negligence per se. I'm saying by the evidence that was presented at trial, that the defendant was negligent as a matter of law, not just because a rear-end accident happened. Since the jury was given alternatives upon which to decide this case, why don't you submit a special interrogatory to ask further clarify what the jury's verdict was going to be? If the jury had concluded that your client was not contributorily negligent at all, then this would be a more interesting and frankly an easier case for me on the question of was the plaintiff negligent? Was the defendant negligent? Excuse me. It goes back to defendant's argument as well that it was irrelevant as to because this was a general verdict and so the court doesn't really have anything to go off of. There were two cases that I had cited in my Zaid v. Penke and Hickox v. Irwin where the court was presented with just the same situation here. A general verdict for the defendant, there were no special interrogatories and it was a situation where the defendant rear-ended a plaintiff, alleged that there was contributory negligence based on the lack of a turn signal and in those cases, unlike the case here, those cases actually alleged third-party intervention or a sudden stopping or bad weather conditions. That's another important thing to note. Many of the cases I cited dealt with third-party intervention, bad weather, or sudden stopping and that the court still, on top of that, found the defendant was still negligent as a matter of law and that it did not matter whether or not the plaintiff had used her right turn signal. Because as the court stated in Zaid, the plaintiff has no duty to get out of the defendant's path so that he can drive ahead without looking forward. That's the situation that we have here, Justice. We have a situation where the defendant is simply saying, well, she should have put on her turn signal because then maybe I would have not driven at the speed that I was going off of. And that's not the situation. It's a situation that the defendant had a duty. If sudden stopping is wrong, isn't slow acceleration also a problem? No, the plaintiff has a duty to go at the flow of traffic and just like the defendant had that same duty, to only move at the flow of traffic. My client was simply moving at the flow of traffic with the cars in front of her and that is something that the defendant must. The defendant testified that there were 4-5 cars in front of her at the time of the accident. The plaintiff testified there were 4-5 cars in front of her at the time of the accident. It was the defendant that testified that he had no idea at that point how many cars were ahead of the plaintiff because he was distracted by looking at the left lane's flow of traffic. In this circumstance and under the overwhelming evidence and the cases cited by the plaintiff as well as the cases another case that was cited by the defendant that is can make a distinction is the Craig Miles case. Counselor, you're out of time. Thanks to both of you. The case is submitted.